UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

DAVID MESSINGER,

              Plaintiff,

    -against-

ROSETTA STONE INC., A. JOHN HASS III,
LAURENCE FRANKLIN, PATRICK W.
GROSS, AEDHMAR HYNES, GEORGE A.
LOGUE, DAVID NIERENBERG, KATHRYN
EBERLE WALKER, JESSIE WOOLLEY-
WILSON, and STEVEN P. YANKOVICH,

            Defendants.

---------------------------------------- X

Case No.: _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff David Messinger ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Rosetta Stone Inc. ("Rosetta Stone" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Rosetta Stone, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and SEC Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by Veritas Capital through its portfolio company Cambium Learning Group ("Cambium") to acquire all of the issued and outstanding

1

shares of Rosetta Stone (the "Proposed Transaction").

2. On August 29, 2020, Rosetta Stone entered into an agreement and plan of merger, (the "Merger Agreement"), whereby shareholders of Rosetta Stone common stock will receive $30.00 in cash for each share of Rosetta Stone common stock they own (the "Offer Price").

3. On September 15, 2020, in order to convince Rosetta Stone's shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.  In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the sales process; (ii) the fairness opinion and financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); and (iii) certain financial projections prepared by Rosetta Stone and relied upon by Goldman Sachs.

4. The Tender Offer is scheduled to expire at one minute after 11:59 p.m., New York City time, on October 13, 2020 (the "Expiration Date").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Rosetta Stone's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act.

7.     The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Rosetta Stone's common stock trades on the New York Stock Exchange, which is headquartered in this District, and Rosetta Stone hired Goldman Sachs as a financial advisor for the purposes of the Proposed Transaction, which is also headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Rosetta Stone common stock.

11.     Defendant Rosetta Stone is a digital education company focused on language and literacy.  The Company's common stock trades on the NYSE under the ticker symbol "RST".

12.     Individual Defendant Laurence Franklin is, and at all relevant times has been, Chief Executive Officer of the Company and the Chairman of the Board of Directors.

13.     Individual Defendant Patrick W. Gross is, and at all relevant times has been, a director of the Company.

14.     Individual Defendant Aedhmar Hynes is, and at all relevant times has been, a director of the Company.

15.     Individual Defendant George A. Logue is, and at all relevant times has been, a director of the Company.

16.     Individual Defendant David Nierenberg is, and at all relevant times has been, a director of the Company.

17.     Individual Defendant Steven P. Yankovich is, and at all relevant times has been, a director of the Company.

18.     Individual Defendant Steven P. Yankovich is, and at all relevant times has been, a director of the Company.

19.     Individual Defendant Steven P. Yankovich is, and at all relevant times has been, a director of the Company.

20.     The defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Rosetta Stone as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Proposed Transaction

21.     Rosetta Stone offers personalized language and reading programs. The Company's solutions are used by schools, businesses, government organizations and individuals around the world. Its segments include Enterprise & Education, which derives revenues from sales to educational institutions, corporations and government agencies worldwide, and Consumer, which derives revenue from sales to individuals and retail partners. Its cloud-based programs allow users to learn online or on-the-go via tablet or smartphone, whether in a classroom, corporate setting, or personal learning environment. Its Fit Brains business offers personalized brain training programs. The Company offers courses in over 30 languages across formats, including Web-based software subscriptions, digital downloads, mobile applications, and perpetual compact disc packages. It also offers a portfolio of technology-based learning products for personal use to the global consumer.

22.     Veritas Capital is a private investment firm that invests in companies that provide critical products and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide, including those operating in the healthcare, aerospace & defense, software, national security, communications, energy, government services and education industries. Veritas seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means.

23.     On August 31, 2020, Rosetta Stone issued a press release announcing the Proposed Transaction, which states in relevant part:

> Cambium Learning Group adds Rosetta Stone to its portfolio of digital-centric learning brands
>
> *Rosetta Stone has entered into a definitive agreement to be acquired by Cambium Learning Group. Rosetta Stone shareholders will receive $30 per share in cash.*

ARLINGTON, VA — August 31, 2020 — Rosetta Stone Inc. (NYSE:RST) ("Rosetta Stone" or the "Company"), a world leader in technology-based learning solutions, today announced that, following a comprehensive process, it has entered into a definitive agreement to be acquired by Cambium Learning Group ("Cambium"), a leading provider of digital education solutions and a portfolio company of Veritas Capital ("Veritas"). Cambium will acquire Rosetta Stone in an all cash transaction for $30 per share, representing an equity value of approximately $792 million, and a premium of approximately 87.5% to Rosetta Stone's unaffected closing price on July 16, 2020, the last trading day before a media report was published speculating about a potential sale process.

The Board of Directors of Rosetta Stone unanimously approved the transaction with one director not participating due to a potential interest in the transaction. The companies anticipate completing the transaction in the fourth quarter of 2020, subject to the satisfaction of customary closing conditions.

Founded in 1992, Rosetta Stone's language division uses innovative digital solutions to help all types of learners read, write, and speak more than 30 languages. Under its iconic brand, Rosetta Stone provides technology-based language solutions to individual customers, schools and businesses globally. Lexia Learning, Rosetta Stone's literacy education division, was founded more than 35 years ago and is a leader in the literacy education space. Today, Lexia helps students build reading and oral language skills through its rigorously researched, independently evaluated, and widely respected instruction and assessment blended-learning programs. Solutions include Lexia® Core5® Reading (online differentiated literacy instruction for students of all abilities in grades pre-K-5), Lexia® PowerUp® Literacy (online solution to help struggling readers in grades 6-12 become proficient readers and confident learners), Rosetta Stone® English (online blended solution to build oral language skills in emergent bilinguals), and Lexia® Rapid™ Assessment (research-based, computer-adaptive reading and language assessment).

With a portfolio of award-winning brands, Cambium's digital and blended curriculum, professional learning, and assessment solutions drive proficiency, equity and other learning outcomes in classrooms everywhere. The addition of the Lexia and Rosetta Stone product lines further enhances Cambium's highly unique continuum of digital products. Cambium is backed by Veritas Capital, a leading investment firm with deep industry expertise and over two decades of experience investing in companies that provide critical products and services to government and commercial customers worldwide.

John Hass, Chairman and Chief Executive Officer of Rosetta Stone, said, "This transaction represents the next step on a path that, over the past several years, has transformed our language business and built a previously small K-12 software business into a growing leader in education technology. As part of Cambium, we will have the scale and resources to fulfill our mission and to further leverage the

strength of our outstanding team to continue building and delivering technology-based solutions that support the ability to change learners' lives through language and literacy education. I am especially grateful for the incredible dedication of our global team who, in a difficult environment this year, transitioned smoothly to delivering high-quality learning at home for students and adults."

"Cambium continues to thoughtfully curate a portfolio of only the best learning brands," said John Campbell, Chief Executive Officer of Cambium. "With the significant addition of Rosetta Stone, including Lexia Learning, we are now able to deliver even more expansive solutions to teachers, administrators, and learners everywhere, and offer a continuum of best-in-class digital solutions that deliver personalized instruction. The team at Rosetta Stone is truly exceptional and I look forward to working together to grow their already-impressive leadership position."

"The acquisition of Rosetta Stone brings highly strategic products and intellectual property to Cambium's market leading family of brands," said Ramzi Musallam, Chief Executive Officer and Managing Partner of Veritas. "We look forward to Cambium's continued investment in its award-winning product portfolio, and are thrilled to be partnering with Rosetta Stone's talented employees as we advance our collective mission of improved learning outcomes through differentiated technology solutions."

The Rosetta Stone Board, company management and advisors drove a deliberate and comprehensive strategic review process. The decision to enter into an agreement with Cambium was the result of this extended evaluation of strategic alternatives by Rosetta Stone's Board of Directors. As part of that review, the Company held discussions with a number of parties, including Cambium, through a formal, competitive process. Further details of the transaction and background of the sale process will be included in the Company's Schedule 14D-9 with respect to the tender offer.

Goldman Sachs & Co. LLC acted as exclusive financial advisor to Rosetta Stone's Board of Directors, and Hogan Lovells US LLP served as the company's legal advisor. Schulte Roth & Zabel LLP acted as Cambium's legal advisor in connection with the transaction.

24.     The Offer Price is inadequate consideration for and does not reflect fair value for the Company. Further, the Recommendation Statement concedes that the Company's executive officers and the members of the Board have interests in the Proposed Transaction "that are different from, or in addition to, those of the Company's other stockholders" that could potentially cause them to enter into such an unfair transaction. *See* Recommendation Statement at 5. It is therefore

imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for shareholders to make an informed decision on whether to tender their shares in the Tender Offer.

**B.**     **The Misleading Recommendation Statement Omits Material Information**

25.     On September 15, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents or omits material information that is necessary for Rosetta Stone shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9 and in breach of the Individual Defendants' duty of candor/disclosure.

The Misleadingly Incomplete Summary of the Sales Process

26.     In the section summarizing the *Background of the Merger*, the Recommendation Statement states that Rosetta Stone executed confidentiality agreements with numerous parties, but fails to disclose whether such agreements contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect.

27.     The express communication of the existence of such provisions is material to Rosetta Stone shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. However, if those confidentiality agreements

contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the *Background of the Merger* section of the Recommendation Statement misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

<u>The Misleadingly Incomplete Summary of the Company's Financial Projections and Goldman Sachs' Fairness Opinion</u>

28.     First, the Recommendation Statement omits critical financial projections, including Rosetta Stone's net income projections (the "Net Income Projections") from all six versions of the projections and the unlevered free cash flow projections for all cases of projections but the final August 2020 10-year Projections (the "Cash Flow Projections"). Defendants elected to include a summary of the Company's financial projections in the Recommendation Statement, but they excised and failed to disclose the Net Income Projections and Cash Flow Projections. By disclosing certain projections in the Recommendation Statement and withholding the Net Income Projections and Cash Flow Projections, Defendants render the tables of projections on pages 42-43 of the Recommendation Statement materially incomplete and provide a misleading valuation picture of Rosetta Stone to its shareholders. Simply put, net income projections and unlevered free cash flow projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

29.     Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a recommendation statement discloses

financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections but have omitted the Net Income Projections. This omission renders the projections included in the Recommendation Statement misleadingly incomplete.

30.    Second, the Recommendation Statement describes Goldman Sachs' fairness opinion and valuation analyses performed in support of its opinion. Defendants concede the materiality of this information in citing Goldman Sachs' fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to Rosetta Stone shareholders. RS at 25; see also RS at 32 ("The following is a summary of the material financial analyses delivered by Goldman Sachs to the Board in connection with rendering the opinion described above."). However, the summary of Goldman Sachs' fairness opinion and analyses provided in the Recommendation Statement fails to include key inputs and assumptions underlying its analysis. Without this information, as described below, Rosetta Stone's shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on Goldman Sachs' fairness opinion in deciding whether to tender their shares in the Tender Offer. The following omitted information, if disclosed, would significantly alter the total mix of information available to Rosetta Stone's shareholders.

31.    In summarizing Goldman Sachs' *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples of each company utilized in the analysis. A fair summary of a comparable companies or transactions analysis requires the

disclosure of the actual multiples for each company or transaction used in the analysis—as illustrated in the summary of Goldman's *Selected Transactions Analysis*. Merely providing average value that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Recommendation Statement misleading.

32.     Similarly, in summarizing Goldman Sachs' *Premia Analysis*, the Recommendation Statement fails to disclose the identity of the transactions or the individual premiums observed. The Recommendation Statement simply states the quartiles. This disclosure is insufficient and renders the summary misleadingly incomplete.

33.     In summarizing Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* (DCF), the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the selection of the discount rate range of 10.0% to 12.0% (including the Company-specific WACC and CAPM components); (ii) the net cash of the Company as of June 30, 2020, (iii) the value of the Company's net operating loss tax attributes; and (iv) the actual terminal values calculated.

34.     These key inputs are material to Rosetta Stone shareholders, and their omission renders the summary of Goldman Sachs' *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles explaining the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions: in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."

Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78 (emphasis added).

35.     Without the above, material information, Rosetta Stone shareholders cannot evaluate for themselves the reliability of Goldman Sachs' *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value per share range reflects the true value of the Company or was the result of Goldman Sachs' unreasonable judgment, and make an informed decision regarding whether to tender their shares in the Tender Offer.

36.     In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act and in breach of the duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and other Rosetta Stone shareholders will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

37.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

38.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

39.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer.  Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

41.     In doing so, Defendants made untrue statements and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and

disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

43.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

### COUNT II
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

45.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

46.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated

thereunder require full and complete disclosure in connection with tender offers.  Specifically,

Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

48.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the

Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

49.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's

directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

50.     The omission of information from a recommendation statement will violate

Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the

omitted information.

51.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9

because it omits material facts, including those set forth above, that render the Recommendation

Statement misleadingly incomplete.  Defendants knowingly or with deliberate recklessness

omitted the material information identified above from the Recommendation Statement, causing

certain statements therein to be materially incomplete and therefore misleading.  Indeed, while

Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

52.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of the right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

**COUNT III**
**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Rosetta Stone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Rosetta Stone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

57.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT IV
**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

63.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

64.     The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to fully informed corporate suffrage—the harm suffered is an individual and irreparable harm.

65.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.


//

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages

C.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 17, 2020                **MONTEVERDE & ASSOCIATES PC**

By:  _/s/ Juan E. Monteverde_
        Juan E. Monteverde (JM-8169)
        The Empire State Building
        350 Fifth Avenue, Suite 4405
        New York, NY 10118
        Tel: (212) 971-1341
        Fax: (212) 202-7880
        Email: jmonteverde@monteverdelaw.com

        *Attorneys for Plaintiff*